**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| SAMMY LEE WILDER, JR.  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>BENNY RIVERA, MALIK ROBERSON,  )<br>TRICIA CORRIGAN, APRIL JESSEN,  )<br>KENTON LEE, MITCHELL KING, and  )<br>AMERICAN SALDANA  )<br>)<br>Defendants.  ) | No.    22 C 50444<br><br>Judge Rebecca R. Pallmeyer |

## MEMORANDUM OPINION AND ORDER

Plaintiff Sammy Lee Wilder suffered a brain bleed in a car accident in December 2021. Following his discharge from Advocate Sherman Hospital in Elgin, Illinois, Wilder was immediately arrested by the Elgin Police Department pursuant to an outstanding warrant and transported to Winnebago County Jail ("WCJ"). During his incarceration at WCJ, Plaintiff alleges that the correctional staff and medical staff ignored his repeated requests for medical attention, resulting in his suffering a stroke while in custody. He seeks relief under 42 U.S.C. § 1983 and state tort law against the correctional officers—Benny Rivera and Malik Roberson (collectively "Correctional Defendants")—as well as the medical staff—Dr. Kenton Lee, Dr. Mitchell King, April Jessen (registered nurse), Tricia Corrigan (nurse practitioner), and American Saldana (nurse practitioner) (collectively "Medical Defendants")—stationed at WCJ. Both sets of Defendants have filed dispositive motions. The Medical Defendants move to dismiss Plaintiff's claims against them (Counts II and III) as barred by the statute of limitations [84]. The Correctional Defendants seek summary judgment [90] on the claim against them (Count I) on failure-to-exhaust grounds. For the following reasons, the Defendants' motions are granted.

**BACKGROUND**

**I.     Factual Background**

This opinion addresses both the Medical Defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and the Correctional Defendants' motion for summary judgment under Federal Rule of Civil Procedure 56. The court ordinarily reviews the operative complaint for the factual account in evaluating a 12(b)(6) motion, and the parties' Local Rule 56.1 statements of undisputed material fact in evaluating a motion for summary judgment. Here, however, the parties base their motions on non-substantive grounds (statute of limitations and failure to exhaust) that rest largely on undisputed facts and do not turn on the merits of Plaintiff's constitutional or state law claims—the court therefore will briefly provide a recitation of the allegations as provided in Plaintiff's fourth amended complaint [70] ("FAC"), as well as an account of Plaintiff's use of WCJ's administrative remedies as contained in the Rule 56.1 statements provided by Plaintiff [97] [102] and the Correctional Defendants [90-1].

**A.     Plaintiff's Allegations**

On December 23, 2021, Plaintiff was injured in a motor vehicle accident and transported to Advocate Sherman Hospital in Elgin, Illinois for treatment. (FAC ¶¶ 4–5.)[1] A CT scan taken at the hospital revealed bleeding in the right portion of Plaintiff's brain, and he was instructed to undergo a follow-up scan in two to three weeks after discharge. (*Id.* ¶ 6.) On December 25, 2021, Plaintiff was discharged from the hospital and arrested by the Elgin Police Department pursuant to an outstanding warrant and then detained in the WCJ in Rockford, Illinois. (*Id.* ¶ 7.) After arriving at WCJ, Plaintiff provided the nursing staff with documentation of his prior brain bleed, and was assured that he would receive treatment and medical attention. (*Id.* ¶ 8.)

---

[1] As there are various errors in the numbering of paragraphs after ¶ 29 of the FAC, for paragraphs after ¶ 29, the court will cite to both page and paragraph.

Two weeks later, Plaintiff used the "Medical Grievance Procedure" on his inmate tablet—a device made available to inmates for submitting medical requests and grievances—noting that he was suffering intense ear pain and headaches. (*Id*. ¶ 9.) He also made requests for medical attention directly to two correctional officers, Defendants Roberson and Rivera, during their shifts in his housing unit. (*Id*. ¶ 10.) Over the course of several weeks (the precise timeline is not provided in the complaint) Plaintiff had multiple sick call visits with the WCJ nursing staff to discuss his pain and need for a follow-up CT scan. He was provided with a monthly supply of Tylenol and put on "the schedule" for a CT scan. (*See id*. ¶¶ 11–13.) On or around February 22, 2022, Plaintiff was told by the nursing staff that he would no longer be scheduled for a CT scan because such a scan "was not necessary," though the complaint does not explain who made this decision. (*Id*. ¶ 14.) The night after Plaintiff was told he would not receive a CT scan, he suffered a stroke in his sleep. (*Id*. ¶¶ 14–15.) When Defendant Rivera saw Plaintiff the following morning, Rivera observed that Plaintiff was showing signs of suffering a stroke and alerted medical staff, who checked on Plaintiff later in the day but allegedly did not treat Plaintiff and instead told him to submit a sick call request. (*Id*. ¶¶ 16–17.) The following day, Plaintiff was seen by Defendant Roberson; Plaintiff alleges that he told Roberson he had suffered a stroke, but "no medical intervention was done." (*Id*. ¶ 18.) Following a scheduled CT scan at Swedish American Hospital on February 25, 2022,[2] WJC medical staff "rushed into [Plaintiff's] unit . . . alerting Plaintiff that he required emergency surgery because his latest CT scan showed that he had been suffering from brain bleeding for approximately two months, causing the stroke he suffered two days earlier." (*Id*. ¶ 21.)

---

[2] The court notes that Plaintiff's attending a "previously scheduled" CT scan on February 25, 2022, is inconsistent with Plaintiff's allegation that WCJ nursing staff told him three days earlier that the scan was not necessary.

B.  **Plaintiff's Grievances**

There is little dispute between Plaintiff and the Correctional Defendants concerning the grievance procedures available at WCJ. Detainees are issued tablets shortly after they are booked at WCJ, and there are request "kiosks" stationed in each housing unit. (Corr. Defs.' Rule 56.1 Statement [90-1] (hereinafter "DSOF") ¶ 34; *see also* Pl.'s Am. Combined Resp. to DSOF & Rule 56.1(b)(3) Statement (hereinafter "Pl.'s Am. Resp. to DSOF") [102] ¶ 34.) As set forth in the "inmate handbook," all requests for medical care, medical grievances, and general grievances must be submitted through the tablets or the kiosks. (*Id*. ¶ 41.) Through either the tablet or the kiosks, inmates can electronically submit their requests or grievances. (*Id*. ¶ 42.) If an inmate submits a request or grievance relating to medical care, the request or grievance is sent directly to the WCJ medical department, operated by the University of Illinois College of Medicine. (*Id*. ¶ 43.) Correctional staff do not have access to and do not review medical requests or grievances.

Plaintiff was incarcerated at WCJ between December 28, 2021, and July 13, 2022. (*Id*. ¶ 45.) In this period, he submitted a total of sixteen medical requests for treatment relating to his need for a CT scan and stroke-related symptoms. (*See id*. ¶¶ 46–61.) The requests are short statements of Plaintiff's symptoms, such as a request reading "So you guys say you cant do something about this so I can't walk or not going to see me tell I get my ct OK ty" on February 20, 2022, or another reading "I believed that I have had a mild stroke and you need to check me out" on February 22, 2022. (*Id*. ¶¶ 53, 58.)

On March 2, 2022, Plaintiff submitted his first and only formal medical grievance while incarcerated at WCJ. (*Id*. ¶ 62; *see* Pl.'s Req. and Grievance Files [90-5] at 73 (internal pagination).) The grievance explained the circumstances of Plaintiff's arrest following the car accident before explaining [sic]:

> I the patient explain my serious of the follow up medical treatment with the booken Nurse here on the day when I the patient was being process into the to a outside medical cat scan. However, I sign a release medical form to[ ]get outside medical records d[ur]ing that time period I started to complain to the medical department symptoms of a stroke the patient['s] right side was in pain then I started to l[o]se

4

> movement in my right side pertaining to my hand and legs and started to l[o]se my hearing and get headache all day. Now I notified the medical department and explain my medical condition told the medical provider I need to get cat scan immediately on the outside. The patient condition started to aggregate to the point the physical therapy providers brought the medical symptoms in their own words the immediate medical need for outside medical treatment. However, on February 25th, 2021 I the patient [went] outside for a cat scan on the outside for medical procedure within this medical procedure patient I the patient discovered I was bleeding in my brain. Now [due] to the delay of not immediately response to prior symptoms of the patient suffer significant injury for not getting a follow-ups that is medical and difference and Malpract[ice].

(*Id*.) A member of WCJ's staff identified as "V.K." in the Grievance Files (the full name of this official does not appear in the record) provided a staff response to Plaintiff's March 2 grievance on March 3, 2022, responding,

> Your chart shows that you were seen in clinic, examined, tested, and sent to the hospital for treatment. If you would like to talk about your medical care with the provider, please let us know and we will schedule the visit.

(Grievance Files at 73.) On March 5, 2022, Plaintiff filed an appeal of the staff response to his March 2 grievance. (*Id*. at 65; DSOF ¶ 63.) The appeal stated in relevant part:

> The medical department had the information that stated I need a cat scan within two weeks of be[ing] interview[ed] by the book[ing] jail nurse that g[a]ve the appropriate [] assessment for each inmate that being incarcerated her in the jail. However, it took two month[s] up to the time period after the physical therapy notice the patient had a stroke for the medical department to acknowledge the patient medical condition . . . [I] had to be rush[ed] into surgery because I was bleeding for two months in my brain . . . I will be asking to be financial[ly] compensated for medical indifference. So in the mean time I the patient is requesting . . . the appropriate medical treatment pl[a]ns.

(*Id*.) On March 12, 2022, a staff member identified as "T.C." responded to Plaintiff's appeal, writing:

> Your records were requested and reviewed once received. Your repeat scan was scheduled once reviewed and seen in clinic. You are receiving appropriate care at this time. If you do not believe you are please submit a request to be seen in clinic.

(*Id*.) There is no evidence of any of WCJ's medical or correctional staff taking further steps beyond the staff response provided in the grievance records.

5

II.   **Procedural History**

Plaintiff filed his original complaint [1] through counsel on December 22, 2022, naming Sheriff Caruana (in charge of correctional officers at WCJ) and "unknown correctional officers" as defendants. (*See* Comp. at 1.) He filed his first amended complaint [11] on March 4, 2023, adding a failure-to-train claim against Sheriff Caruana. (*See* First Am. Comp. at 6–7.) A second amended complaint [22], filed on July 10, 2023, terminated Caruana as a defendant and replaced "unknown correctional officers" with the names of nine correctional officer defendants. (*See* Second Am. Comp. at 1.) He filed a third amended complaint [39] [44] on January 5, 2024, terminating all but two correctional officers (Rivera and Roberson) as Defendants, and adding, for the first time, "The University of Illinois College of Medicine Correctional Health Care Services" ("the University") as a defendant. (*See* Third Am. Comp. at 1.) Finally, Plaintiff filed the fourth amended complaint on May 28, 2024, removing the University as a defendant and naming the individual Medical Defendants. (FAC at 1.) In the FAC, Count I brought deliberate indifference claims under § 1983 against the Correctional Defendants; Count II raised the same constitutional claims against the Medical Defendants; and Count III brought state law medical malpractice claims against the Medical Defendants. (*See generally* FAC at 5–10.) The Medical Defendants moved to dismiss Counts II and III (the claims against them) under Rule 12(b)(6) on August 13, 2024. (*See* Mot. to Dismiss at 1.) The Correctional Defendants moved for summary judgment for failure to exhaust on August 22, 2024. (Mot. for Summ. J. at 1.) The motions are now fully briefed.

## **LEGAL STANDARDS**

I.   **Motion to Dismiss**

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint "by arguing that it fails to state a claim upon which relief may be granted." *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015). The Medical Defendants argue that Counts II and III of the FAC must be dismissed because Plaintiff's action against them is barred by the two-year statute of

limitations. In general, "dismissal under Rule 12(b)(6) is irregular, for the statute of limitations is an affirmative defense." *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613 (7th Cir. 2014) (quoting *United States v. N. Tr. Co.*, 372 F.3d 886, 888 (7th Cir. 2004)) (alterations omitted). At the pleading stage, dismissal for failure to comply with the statute of limitations is appropriate only where a plaintiff "affirmatively plead[s] himself out of court" by making allegations in the complaint that "plainly reveal that the action is untimely under the governing statute of limitations." *Id.* at 614 (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)) (alterations omitted).

## II. Summary Judgment

"Summary judgment is appropriate if there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law." *Dunderdale v. United Airlines, Inc.*, 807 F.3d 849, 853 (7th Cir. 2015) (citing FED. R. CIV. P. 56(a)). A genuine issue of material fact exists only if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## **DISCUSSION**

### I. Statute of Limitations

The applicable statute of limitations for Plaintiff's claims is not in dispute. Count II alleges deliberate indifference claims against each of the Medical Defendants for their roles in Plaintiff's medical treatment while incarcerated at WCJ, actionable under 42 U.S.C. § 1983. *See supra* p. 6. The statute of limitations for § 1983 claims is borrowed from the state statute of limitations for personal injury actions where the alleged injury occurred. *Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998). Accordingly, "the limitations period applicable to all § 1983 claims brought in Illinois is two years, as provided in 735 ILCS 5/13–202." *Woods v. Ill. Dep't of Child. & Fam. Servs.*, 710 F.3d 762, 768 (7th Cir. 2013). Count III alleges that the Medical Defendants breached their duty of care under Illinois law in providing medical care to Plaintiff; it is subject to the two-year statute of limitations for medical malpractice claims in Illinois. 735 ILCS 5/13-22.

7

The allegations in the FAC describe conduct between December 23, 2021 (when Plaintiff was injured in a car accident) and February 24, 2022 (Plaintiff's final allegation that Roberson observed his physical condition but "no medical intervention was done"). (*See* FAC ¶¶ 4, 18.) Assuming, as do the Medical Defendants, that the clock for filing this action started as late as possible—February 24, 2022—Plaintiff had until February 24, 2024, to bring timely constitutional and medical malpractice claims against Defendants. (*See* Med. Defs.' Mem. [85] at 5.) Plaintiff's original complaint was timely filed on December 22, 2022, but named only Sheriff Gary Caruana and "unknown correctional officers" as defendants. (*See* Comp. at 1.) The second amended complaint, also filed within the statute of limitations on January 5, 2024, replaced "unknown correctional officers" with nine named officers, including Defendants Rivera and Roberson. (Second Am. Comp. at 1.) The third amended complaint terminated seven of the nine named officers and Sheriff Caruana as defendants, and added "University of Illinois College of Medicine Correctional Health Care Services" as a defendant in the case. (Third Am. Compl. at 1.) The individual Medical Defendants were not named until Plaintiff's fourth amended complaint filed on May 28, 2024, after the two-year statute of limitations had elapsed. It thus appears on the face of the FAC that Plaintiff's claims against the Medical Defendants were brought outside the statute of limitations.

Plaintiff "acknowledges that the statute of limitations time has passed since filing the original complaint" but urges that allegations against the medical defendants in the FAC "relate back" to the original complaint and are thus timely. (*See* Pl.'s MTD Opp'n [100] at 2.) He further contends that the statute of limitations should be tolled because "Plaintiff's position of being an inmate within the care and custody of Defendants limited his ability to get knowledge" of the Medical Defendants' proper identities. (*See id*. at 3.)

8

C.    **Relation Back**

Federal Rule of Civil Procedure 15(c)(1)(C)[3] provides that an amendment to a pleading that "changes the party or the naming of the party against whom a claim is asserted" relates back to the date of initial pleading if, within the time period for service set by Rule 4(m), the parties brought in by the amendment (i) "received such notice of the action that [they] will not be prejudiced in defending on the merits" and (ii) "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper part[ies]'s identit[ies]." FED. R. CIV. P. 15(c)(1)(C).[4]  Here, the Medical Defendants do not assert under (i) that they will be prejudiced in their ability to defend the case on the merits.  Rather, the only question for the court to resolve is whether Plaintiff's naming of "unknown correctional officers" in the original complaint or, alternatively, "University of Illinois College of Medicine Correctional Health Care Services" in the third amended complaint were "mistake[s]" under the meaning of Rule 15(c)(1)(C)(ii), such that the Medical Defendants "knew or should have known" that the action was really against them.

Beginning with Plaintiff's naming of "unknown correctional officers" in the original complaint, the Seventh Circuit has provided clear guidance that the naming of an anonymous or unknown defendant is not a "mistake" that allows for a later amendment to relate back.  *See King v. One Unknown Fed. Corr. Off.*, 201 F.3d 910, 914 (7th Cir. 2000) (naming of "unknown federal

---

[3]    Rule 15(c)(1)(A) also allows for an amendment to relate back to the date of initial pleading when "the law that provides the applicable statute of limitations allows relation back." FED. R. CIV. P. 15(c)(1)(A).  In this case, that would be the Illinois relation back statute, 735 ILCS 5/2-616.  As Plaintiff notes, the Illinois statute is modeled after Rule 5(c), and Illinois courts look to federal case law in applying it.  *See Borchers v. Franciscan Tertiary Province of Sacred Heart, Inc.*, 2011 IL App (2d) 101257 ¶ 45, 962 N.E.2d 29, *as modified on denial of reh'g* (Feb. 28, 2012). The court thus addresses the state and federal grounds for relation back concurrently.

[4]    Rule 15(c)(1)(C) also requires, as a prerequisite, that the amendment bringing in a new party "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out—in the original pleading." FED. R. CIV. P. 15(c)(1)(C) (referring to FED. R. CIV. P. 15(c)(1)(B)).  There can be no dispute that this requirement is satisfied here, however, as Plaintiff's claims against the Medical Defendants arise directly from his medical treatment at WCJ described in his original complaint.  (*See* Comp. ¶¶ )

9

correctional officer" as defendant was not "mistake" for relation back provision of Rule 15(c)(1)(C)); *Worthington v. Wilson*, 8 F.3d 1253, 1257 (7th Cir. 1993); *Wood v. Worachek*, 618 F.2d 1225, 1230 (7th Cir. 1980). The Seventh Circuit reaffirmed this in *Herrera v. Cleveland*, 8 F.4th 493 (7th Cir. 2021). The plaintiff brought a § 1983 action against three correctional officers who allegedly failed to protect him from an assault and denied him medical care. *Herrera*, 8 F.4th at 494. The plaintiff filed his original complaint within the statute of limitations but, lacking knowledge of the names of the officers, named each defendant as "John Doe" as a nominal placeholder. *Id*. Later, after the statute of limitations had run, plaintiff sought to amend his complaint to include the proper names of the correctional officer on the theory that his naming of the correctional officers as "John Doe" was a "mistake" under the meaning of Rule 15(c)(1)(C)(ii). *Id*. at 495. The district court allowed the amendment, but the Seventh Circuit reversed. It held that "naming a defendant as John Doe in the complaint is not based on an error, misconception, misunderstanding, or erroneous belief" or "a mere slip of the pen," but rather "an intentional and informed decision [that] cannot amount to a mistake." *Id*. at 498 (quotation omitted). Plaintiff Herrera's intentional choice to use a nominal placeholder was not a "mistake" for the purposes of relating untimely amendments back to the original filing date. *Id*. *Herrera* applies directly in this case; Plaintiff used "unknown correctional officers" as an intentional placeholder in his original complaint, and it cannot serve as the basis for relation back under Rule 15(c)(1)(C)(ii).

Plaintiff argues in the alternative that his naming of the Medical Defendants in the FAC relates back to the third amended complaint where he named "University of Illinois College of Medicine Correctional Health Care Services" as a defendant. (Pl.'s MTD Opp'n at 2.) That argument also fails. "University of Illinois College of Medicine Correctional Health Care Services" is not a nominal placeholder in the same way that "unknown correctional officers" is, but *Herrera* makes clear that the naming of an improper defendant to *account* for a lack of knowledge is not the same as a mistake *resulting* from a lack of knowledge. *Herrera*, 8 F.4th at 499 ("Naming a John Doe defendant as a nominal placeholder is not a wrong action proceeding from inadequate

10

knowledge; it is a proper action on account of inadequate knowledge."). This is not a case of mistaken identity; Plaintiff did not *confuse* "University of Illinois College of Medicine Correctional Health Care Services" with Defendants Corrigan, Jensen, Kenton, King, or Saldana. Rather, Plaintiff was aware that "he had a lack of knowledge about who was involved in his treatment" and named the University as a substitute for the medical professionals. (Pl.'s MTD Opp'n at 4; *see also* Third Am. Comp. at 7 ¶ 32 ("[the College] was represented by its employees Doctor K. Lee and various nurses and nurse practitioners whose identities cannot be ascertained . . . .").)[5] If not literally, the naming of the University as a defendant was a functional placeholder for the then-unknown medical providers, and *Herrera* applies with full force.

Plaintiff does not address any of the Seventh Circuit precedents discussed above, instead relying on the rationale of *Borchers v. Franciscan Tertiary Province of Sacred Heart, Inc*., 2011 IL App (2d) 101257, 962 N.E.2d 29, *as modified on denial of reh'g* (Feb. 28, 2012), to these facts. (Pl.'s MTD Opp'n at 3.) In *Borchers*, the plaintiff brought claims against her former employer "Mayslake" and "unknown persons" under the Electronic Communications Privacy Act, claiming that Mayslake employees had unlawfully accessed her personal email account. 2011 IL App (2d) 101257, ¶ 1; 962 N.E.2d at 32. Later, after the statute of limitations had run, the plaintiff sought to amend her complaint and add the names of two Mayslake employees, Frigo (her former boss) and Maxwell (Frigo's assistant), whom she determined were involved in the alleged unlawful conduct. *Id*. In determining whether plaintiff's attempted addition of the named individuals related back to the original complaint, the Illinois appellate court interpreted the Supreme Court's opinion

---

[5] Importantly, while Plaintiff may not have known the names of the Medical Defendants at the time of the third amended complaint, he did not lack knowledge about the treatment he received or harbor misimpressions about the Medical Defendants' roles in his treatment. *Cf. Krupski v. Costa Crociere S. p. A*., 560 U.S. 538, 549 (2010) (holding that Rule 15(c)(1)(C) may apply where a plaintiff "harbor[s] a misunderstanding about [defendant's] status or role in the events giving rise to the claim at issue" and sues a different defendant "based on that misimpression"). The factual allegations in the FAC are identical to the allegations described in the third amended complaint, only with the defendant's proper names added. Indeed, Plaintiff identifies Defendant Dr. Lee as his treating physician in the third amended complaint but does not name him as a defendant. (Second Am. Comp. at 9 ¶ 28.)

in *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538 (2010), where the plaintiff sued for injuries she suffered while aboard a cruise ship, naming the cruise-ship operator's marketing subsidiary. When she later named the correct defendant—the cruise-ship operator—the Supreme Court held that her untimely amendment related back to her "mistake" in the initial action. *See* 560 U.S. at 554–55. The *Borchers* court read *Krupski* as adopting a broad definition of "mistake" under Rule 15(c)(1)(C)(ii) (and 735 ILCS 5/2-616(d)) that includes circumstances in which a plaintiff fails to name a defendant because of "a lack of knowledge about the identity of all of those involved in the alleged wrongdoing." *Borchers*, 2011 IL App (2d) 101257, ¶ 52, 962 N.E.2d at 48–49. Under that broad definition, the *Borchers* court allowed the untimely amendment that named two new defendants, reasoning that the amendments related back to the original complaint, which named only "unknown persons" as individual defendants. *See id*. ¶¶ 20, 52; 962 N.E.2d at 37, 48–49. But *Borcher*'s expansive interpretation of *Krupski* appears to be squarely inconsistent with *Herrera*, where the plaintiff argued for a similarly broad interpretation of *Krupski* (one that had been adopted by several federal district courts), and the Seventh Circuit rejected it. *See* 8 F.4th at 497–98. Instead, in a lengthy analysis, the Seventh Circuit explained how *Krupski* "did not alter the definition of mistake under Rule 15(c)" and instead confirmed that the naming of a nominal or placeholder defendant is not a "mistake" under the meaning of the rule. *Id*.; *see also Salameh v. MTF Club Operations Co., Inc.*, No. 21 CV 4080, 2021 WL 4951529, *4 (N.D. Ill. Oct. 25, 2021) (noting conflict between *Borchers* and *Herrera*).

   Indeed, it is useful to contrast the asserted "mistake" in this case from the mistake that the Supreme Court held did allow for relation back in *Krupski*. There, the plaintiff initially named a marketing subsidiary, Costa Cruise Lines, as defendant because that was the entity named on her cruise ship ticket, whom she reasonably believed to operate the ship. *See* 560 U.S. at 541–42. She later discovered that Costa Cruise Lines was was merely a subsidiary marketing agent of the company, Costa Crociere, that actually owned and operated the vessel. *Id*. at 543. The plaintiff's later naming of Costa Crociere as the defendant related back to the original complaint—

12

despite the lower court's finding that plaintiff "either knew or should have known of the proper party's identity"—because Plaintiff's misunderstanding of the parties' roles was a mistake and Costa Crociere, as the parent company, had notice that the action brought against its marketing subsidiary was really a claim against itself. *Id*. at 549–550. Thus, as *Herrera* explains, the mistake in question was not purely the plaintiff's lack of knowledge; plaintiff's lack of knowledge *led to* a misunderstanding of the respective roles of the parent and subsidiary and the "wrong action" of naming of an improper defendant. *Herrera*, 8 F.4th at 498–99. Here, there is no misunderstanding or wrong action stemming from Plaintiff's lack of knowledge of certain names.

Of course, Illinois courts are free to interpret section 2-616(d) differently than the Seventh Circuit interprets Rule 15(c). *See* FED. R. CIV. P. 15(c)(1)(A); *see also supra* p. 9 n. 3. But *Borchers* based its interpretation of § 2-616(d) entirely on federal case law (and state court interpretation of federal cases), making it likely that an Illinois court returning to this question post-*Herrera* will come out differently. *See Salameh*, 2021 WL 4951529, at *4 ("I conclude that Illinois courts interpreting § 2-616(d) today would follow suit and find that plaintiffs' inadequate knowledge of [defendant's] identity was not a mistake.") Indeed, at least one Illinois appellate court has cast doubt on whether *Borchers* is good law in the wake of *Herrera*. *See Dalessandro v. Quinn-Dalessandro*, 2023 IL App (1st) 211119, ¶ 53, 225 N.E.3d 643 (referring to plaintiff's reliance on *Borchers* as a "problem[]" because it has "been called into question" by *Herrera*).

Notably, a more recent Illinois case appears to be a closer match to this one and suggests that Plaintiff is not entitled to relate back under § 2-616(d). In *Redmond v. Galvan*, 2022 IL App (1st) 210653, 224 N.E.3d 246, the plaintiff's father was allegedly wrongfully resuscitated by doctors employed by University of Illinois & Health Sciences System ("Hospital"). 2022 IL App (1st) 210653, ¶ 1, 224 N.E.3d at 249. He then brought a medical malpractice suit in state court within the two-year statute of limitations, naming the Hospital as the defendant. *Id*. After the Hospital moved to dismiss on jurisdictional grounds (as a state entity, the Hospital could only be sued in the Illinois Court of Claims), the plaintiff sought to amend the complaint, naming the

13

individual doctors as defendants, but the trial court dismissed the claims against them as barred by the statute of limitations. *Id*. Affirming, the Illinois appellate court held that plaintiff's failure to name the doctors in the initial complaint was not a mistake within the meaning of § 2-616(d). *Id*. ¶¶ 2–3, 224 N.E.3d at 249. The court explained that "[t]his is not a case where plaintiff meant to sue the individual doctors but inadvertently sued the Hospital in a case of mistaken identity"; instead, "the Hospital was a perfectly appropriate party to hold accountable—it was just one that, it so happened, could not be sued in circuit court." *Id*. ¶ 34, 224 N.E.3d at 253. Accordingly, "[t]he doctors . . . could not possibly have considered the situation to be one of literal mistaken identity" and thus were not on notice that the action was intended to be against them. *Id*. The original complaint properly identified the doctors' roles in their treatment of the Plaintiff and "the doctors could not have reasonably believed that the plaintiff did not understand that they were physicians." *Id*. ¶ 36, 224 N.E.3d at 253–54. In short, "the[] doctors would have no reason to think that their omission as party-defendants in the original complaint was due to anything but a conscious choice by plaintiff." *Id*. ¶ 43, 224 N.E.3d at 255.

The procedural posture here supports a similar conclusion. Plaintiff's (timely) third amended complaint clearly identified the different treatments he received at WCJ, and even identified one physician, Dr. Lee, by name—but named only the University and two correctional officers as Defendants. He filed a fourth amended complaint, replacing the University with named providers, only after the University invoked sovereign immunity. (*See* Univ. of Ill. Mot. to Dismiss [51] ¶ 2.) Even if the court were to accept *Borchers*' broad definition of "mistake" under Rule 15(c) and § 2-616(d), there is no relation back unless the mistake is such that the Medical Defendants "knew or should have known that the action would have been brought against [them], but for [the mistake]." FED. R. CIV. P. 15(c)(1)(C)(ii). As *Redmond* shows, where there is no indication from the complaint that the plaintiff has mistaken identities, misunderstood the roles of different actors, or misnamed a party, a *possible* defendant that is mentioned in the complaint does not have

14

reason to know that they should be or will be a party to the case. This defeats any attempt to relate Plaintiff's claims against the Medical Defendants back to the third amended complaint.

### D. Equitable Tolling

Plaintiff asks the court to "recognize that he had limited control, knowledge, and authority to get all necessary information needed to file his complaint." (Pl.'s MTD Opp'n at 4.) He maintains that he "did his due diligence in timely filing his complaint . . . and subsequently added the additional names when the names were acquired." (*Id*.) Though Plaintiff does not use the term, this is an argument for equitable tolling of the statute of limitations.

For Plaintiff's federal and state law claims alike, the court applies Illinois equitable tolling doctrines. *Bryant v. City of Chicago*, 746 F.3d 239, 243 (7th Cir. 2014) ("Because we apply Illinois's statute of limitations, we also apply Illinois's equitable tolling principles [in § 1983 cases]"); *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012) (for motions to dismiss state law claims on statute of limitations grounds, "we apply state law regarding the statute of limitations and any rules that are an integral part of the statute of limitations, such as tolling and equitable estoppel") (quotations omitted). Under Illinois law, equitable tolling "permits a court to excuse a plaintiff's failure to comply with a statute of limitations where because of disability, irremediable lack of information, or other circumstances beyond his control, the plaintiff cannot reasonably be expected to file suit on time." *Hart v. Loan Kieu Le*, 2013 IL App (2d) 121380, ¶ 5, 995 N.E.2d 1002 (quoting *Williams v. Bd. of Rev.*, 948 N.E.2d 561, 567, 241 Ill.2d 352 (2011)) (internal quotation omitted). Equitable tolling does not require a showing of fault on the part of the defendant. *Am. Fam. Mut. Ins. Co. v. Plunkett*, 2014 IL App (1st) 131631, ¶ 32, 14 N.E.3d 676. But it does require a showing of due diligence on the part of the plaintiff. *Hart*, 2013 IL App (2d) 121380, ¶ 5, 995 N.E.2d at 1004.

Plaintiff in this case has not made a credible argument that a disability, irremediable lack of information, or circumstances beyond his control prevented him from learning the names of the Medical Defendants within the statute of limitations period. The only argument he offers on this

15

score is that he "was a prisoner and had limited knowledge." (Pl.'s MTD Opp'n at 4.) But while courts have recognized tolling given the precarious circumstances for pro se prisoner plaintiffs, *see Bryant*, 746 F.3d at 243 (citing *Donald v. Cook Cnty. Sheriff's Dep't*, 95 F.3d 548, 562 (7th Cir. 1996), Plaintiff has been represented by capable counsel for the entirety of this case. (*See* Comp. at 1.) Plaintiff's attorney has been active in filing amended pleadings and has had the opportunity to engage in discovery to determine the names of unknown individuals. For example, though the original complaint named "unknown correctional officers," Plaintiff's counsel was able to obtain Rule 26.1(a) disclosures providing the names of Defendants Roberson and Rivera well within the statute of limitations period. (*See* Mot. [24] ¶¶ 1–2.) After naming the University as a defendant, counsel sought information concerning the identity of the individual providers by way of an informal request on March 15, 2024, and then, in response to the University's request, by serving formal interrogatories on March 26, 2024. (*See* Joint Status Rep. [55] ¶¶ 2–3.) The University responded to these interrogatories, providing the names of the providers, on April 26, 2024. (Joint Status Rep. [63] ¶ 1.) The problem for Plaintiff is that he added the University as a defendant only a month before the two-year statute of limitations elapsed, and then served his requests for information after the statute of limitations had expired. These steps could have been taken sooner, and Plaintiff has not shown that circumstances "beyond his control" prevented him from learning the identity of the hospital or naming it in an amended complaint earlier in the litigation. *Hart*, 2013 IL App (2d) 121380, ¶ 5, 995 N.E.2d at 1004.

Because neither relation back nor equitable tolling brings Plaintiff's naming of the Medical Defendants within the statute of limitations period, Plaintiff's claims against the Medical Defendants must be dismissed.

## II. Failure to Exhaust

The Correctional Defendants, separately, move for summary judgment on the grounds that Plaintiff failed to exhaust the administrative remedies provided by WCJ's grievance process before commencing his lawsuit. The PLRA provides that "[n]o action shall be brought with respect

16

to prison conditions under section 1983 of this title . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion requires that the prisoner "take each of the steps prescribed by the state's administrative rules governing prison grievances." *Williams v. Rajoli*, 44 F.4th 1041, 1045 (7th Cir. 2022) (quoting *Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020)). "But a prisoner needn't exhaust a remedy that's 'unavailable,' such as when 'prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting.'" *Id*. (quoting *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Failure to exhaust is an affirmative defense, and the burden of proof is on the Correctional Defendants to prove that Plaintiff did not exhaust the remedies available to him at WCJ. *See Ramirez v. Young*, 906 F.3d 530, 533 (7th Cir. 2018).

The Correctional Defendants assert that there is no dispute of material fact that administrative remedies for Plaintiff's complaints against Rivera and Roberson were available to Plaintiff and that he did not use them. WCJ had a grievance process outlined in the "inmate handbook" that allowed inmates to submit medical requests, medical grievances, and general grievances through accessible tablets and kiosks. (*See* Pl.'s Am. Resp. to DSOF ¶¶ 35–36.) Plaintiff appears to dispute that he was instructed on the grievance process (*see id*. ¶¶ 30–31), but it is undisputed that he submitted sixteen medical requests and a formal medical grievance through WCJ's grievance process during the relevant period of his injuries. (*See id*. ¶¶ 40–63; *see also generally* Grievance Files (records of Plaintiff's dozens of requests and grievances during his incarceration at WCJ).) In Plaintiff's formal medical grievance, and following appeal, Plaintiff details how he "notified the medical department and explain[ed]" his medical condition, but does not mention any correctional officers or refer to his claims against them. (*See* Pl.'s Resp. to DSOF ¶¶ 56–57.) Plaintiff filed no separate grievance against the Correctional Defendants. Thus, because WCJ's grievance procedures were available and Plaintiff did not use them to challenge Rivera or Roberson's conduct, they argue he did not exhaust his administrative remedies as required by the PLRA.

Defendants liken this case to *King v. Dart*, 63 F.4th 602 (7th Cir. 2023), where a pre-trial detainee brought § 1983 claims against a correctional officer ("Szul") who failed to facilitate treatment for the plaintiff after the plaintiff requested medical attention for a severe burn. 63 F.4th at 604. The plaintiff filed formal grievances against a "Sgt. Heinz" and "Medical Staff" for failure to provide him adequate medical care but did not mention Szul in his grievances. *Id*. The Seventh Circuit affirmed the trial court's dismissal of the plaintiff's claim against Szul for failure to exhaust, reasoning that though "King had filed a grievance and appealed the Jail's response, the allegations of the grievance did not give the Jail proper notice of his claim against Szul." *Id*. at 608. Because King's grievance "did not even mention Szul" and "stated only that medical staff were liable for [King's] injuries," the court found that "the allegations in the grievance do not support the claim he pursued in this lawsuit" and did not satisfy the exhaustion requirement. *Id*. The same reasoning applies here. A prisoner may not need to name every individual wrongdoer, so long as the grievance provides ample notice of the nature of his claim. Here, however, Plaintiff's formal medical grievance would have put WCJ's *medical staff* on notice of his potential claims against his providers, but his grievance neither named nor mentioned his claim that correctional officers ignored his need for medical attention. Plaintiff's medical requests and grievance thus would not have put WCJ officials on notice that prison staff had violated his rights.[6]

In his opposition to the motion for summary judgment, Plaintiff largely focuses on the merits of his constitutional claims against the Correctional Defendants (*see generally* Pl.'s MSJ Opp'n [99].) His situation is indeed sympathetic, but the merits of his claims are not relevant to the exhaustion question. *See Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), *as amended on denial of reh'g and reh'g en banc* (Sept. 12, 2008) ("[I]n the ordinary case discovery with respect

---

[6] It is also worth reminding that the Correctional Defendants have provided undisputed testimony that medical requests and grievances are sent directly to the WCJ medical department operated by the University of Illinois College of Medicine—the correctional staff that would review grievances against correctional officers did not have access to Plaintiff's medical grievance and could not be put on notice of any potential claim. (*See* DSOF ¶ 43.)

to the merits should be deferred until the issue of exhaustion is resolved.") Noting this, the court ordered Plaintiff to amend his responses to the motion for summary judgment to respond to the failure to exhaust argument. (Minute Order [101] at 1.) Plaintiff did so by adding two paragraphs to his declaration and amended Rule 56.1(b)(3) statement, the only material addition being the claim that

> Defendants Rivera and Roberson, when asked by me to reach out to their superior officers, so that I can speak to their superior officer regarding my treatment and physical condition, responded by saying that the procedure was to talk to medical and not the superior officer. This is the reason why I did not file any grievances against Rivera and Roberson, I was told that any grievances should be towards medical not the officers.

(Pl.'s Am. Resp. to DSOF ¶ 80.) This last-second allegation alone does not create a material dispute over whether Plaintiff exhausted administrative remedies. Plaintiff did not provide an amended memorandum, but the court understands the Plaintiff to be asserting that his failure to file a grievance against the Correctional Defendants should be excused because Rivera and Roberson told him to "talk to medical" at an unspecified date and time. A defendant's "affirmative misconduct" can excuse the exhaustion requirement where it actually prevents Plaintiff from using available administrative remedies, *see Williams*, 44 F.4th at 1045, but the alleged statements by Rivera and Roberson do not amount to anything like affirmative misconduct. As Plaintiff himself alleges, he asked to speak to a superior officer about "treatment and physical condition," not a complaint of officer misconduct—Rivera and Roberson would reasonably have directed Plaintiff towards the medical staff for such medical concerns. But even if Plaintiff's question could be construed as stating an intention to complain about the Correctional Defendants' conduct, Plaintiff's new allegation does not explain why Plaintiff could not mention the Correctional Defendants, or any correctional officer, in his many medical requests and formal grievance. Plaintiff may have raised a material dispute had he included a hint of his claims against the Correctional Defendants in his formal grievance, but he did not. The first indication of Plaintiff's claims against the correctional officers was his complaint, "and federal courts lack discretion to

consider a claim that has not traveled the required administrative path." *Bowers v. Dart*, 1 F.4th 513, 518 (7th Cir. 2021).

## **CONCLUSION**

Defendants Corrigan, Jessen, Lee, King, and Saldana's motion to dismiss Counts II and II of the FAC [84] is granted. Defendants Rivera and Roberson's motion for summary judgment [90] is granted. The Clerk is directed to enter judgment in favor of Defendants.

ENTER:

Dated: March 21, 2025

_____
REBECCA R. PALLMEYER
United States District Judge